# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

| | | |
|---|---|---|
| NATHAN KRAS, | ) | |
|     Plaintiff/Judgment Creditor, | ) | |
| | ) | |
| v. | ) | CAUSE NO.:2:16-CV-224-JD-JEM |
| | ) | |
| CONIFER INSURANCE COMPANY, | ) | |
|     Garnishee-Defendant, | ) | |
| | ) | |
| CONIFER INSURANCE COMPANY, | ) | |
|     Counter Claimant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| NATHAN KRAS, | ) | |
|     Counter Defendant. | ) | |

## OPINION AND ORDER

This matter is before the Court on a "Motion for Extension of Time to Respond to Plaintiff's Motion for Summary Judgment" [DE 20], filed by Garnishee-Defendant Conifer Insurance Company on July 26, 2016. Conifer asks the Court to extend its deadline for responding to Plaintiff Nathan Kras's summary judgment motion until 30 days after the completion of discovery and the resolution of any discovery disputes. Kras has responded, and Conifer has replied.

### I. Background

In September 2013, Nathan Kras was shot in the leg and abdomen outside a Hammond, Indiana nightclub. Two years later, in September 2015, Kras sued the nightclub and its owners in state court, alleging negligence. The nightclub owners had insurance with Conifer Insurance Company, but Conifer denied the nightclub owners' request for coverage for the attack. In Conifer's view, the policy provided coverage for the nightclub property only, not for the adjoining gravel parking lot where Conifer said the attack occurred.

The state court litigation proceeded without Conifer's involvement. In March 2016, Kras served 28 admissions requests on the nightclub owners—the Court will refer to them as the insureds—regarding the nature, extent, and amount of Kras's injuries and damages, the location of the attack, and the insureds' fault with respect to the attack. The insureds fairly quickly agreed to a consent judgment by which they admitted negligence and admitted to all 28 admissions requests. The state court entered judgment against the insureds for $2,955,056—the amount of damages identified in the consent judgment and in the admissions requests.

Having received judgment in his favor, in April 2016 Kras filed a motion for a proceeding supplemental. Kras sought to garnish $2,955,056 from Conifer in satisfaction of the state court judgment against the insureds. Conifer removed the case to federal court.

On July 20, 2016, Kras filed a motion for summary judgment. At the time, neither party had conducted any discovery. But two days later, on July 22, 2016, Conifer served interrogatories and document production requests on Kras.

Conifer now seeks to extend its deadline for responding to Kras's summary judgment motion until 30 days after the completion of discovery and the resolution of any discovery disputes. *See* Fed. R. Civ. P. 56(d) ("If a nonmovant shows [that] it cannot present facts essential to justify its opposition [to summary judgment], the court may: (1) defer considering the motion or deny it; (2) allow time . . . to take discovery; or (3) issue any other appropriate order.").

## II. Analysis

In general, the Court can extend a party's deadline for responding to a summary judgment motion if the party is unable to present facts essential to its opposition. Fed. R. Civ. P. 56(d); *Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986) (premature summary judgment motions "can be

adequately dealt with under Rule 56(f) [now Rule 56(d)], which allows a summary judgment motion to be denied, or the hearing on the motion to be continued, if the nonmoving party has not had an opportunity to make full discovery"); *Woods v. City of Chicago*, 234 F.3d 979, 990 (7th Cir. 2000) ("Rule 56(f) [now Rule 56(d)] authorizes a district court to refuse to grant a motion for summary judgment or to continue its ruling on such a motion pending further discovery if the nonmovant . . . demonstrat[es] why it cannot yet present facts sufficient to justify its opposition to the motion."), *cert. denied* 534 U.S. 955.

In a proceeding supplemental, a party is still entitled to discovery, although the Court has discretion to limit or even eliminate discovery to ensure that the procedure for enforcing a judgment remains swift and cheap. *Symons Int'l Group, Inc. v. Cont'l Cas. Co.*, 306 F.R.D. 612, 617-18 (S.D. Ind. 2014) ("Both state and federal rules . . . allow for discovery in proceedings supplemental, and in considering the procedure by which discovery is conducted, the Court has considerable discretion . . . . to fashion procedures ensuring that '[p]roceedings to enforce judgments' remain 'swift, cheap, [and] informal.'") (alterations in original) (quoting *Resolution Trust Corp. v. Ruggiero*, 994 F.2d 1221, 1226 (7th Cir. 1993)).

Here, Conifer argues that Kras's summary judgment motion raises issues that require discovery regarding what factual findings the trial court entered and whether the trial court's judgment amount was reasonable. Conifer says that it has not had an opportunity to obtain evidence relating to those issues, and that good cause exists to extend Conifer's response deadline because Conifer has been diligent in its discovery efforts (for example, serving discovery requests on Kras four days after answering Kras's complaint). *See* Fed. R. Civ. P. 6(b) ("When an act may or must be done within a specified time, the court may, for good cause, extend the time . . ."); *Saul v. Prince*

3

*Mfg. Corp.*, No. 12-270, 2013 U.S. Dist. LEXIS 8199, *3 (N.D. Ind. Jan. 22, 2013) ("The good cause standard focuses on the diligence of the party seeking the extension.").

Kras argues that no discovery is necessary. In Kras's view, Conifer is bound by the result of the state court lawsuit because Conifer, having had notice of the lawsuit and an opportunity to control the proceedings, chose neither to defend its insureds nor to file a declaratory judgment action. *State Farm Fire & Cas. Co. v. T.B.*, 762 N.E.2d 1227, 1231 (Ind. 2002) ("The doctrine of collateral estoppel applies to insurance contracts and an insurer is ordinarily bound by the result of litigation to which its insured is a party, so long as the insurer had notice and opportunity to control the proceedings.") (quotation omitted).

### A. Discovery regarding the trial court's factual findings

Kras is correct that collateral estoppel generally applies when an insurer abandons its insured by neither defending under a reservation of rights nor seeking a declaratory judgment on the coverage issues. *State Farm Fire & Cas. Co. v. T.B.*, 762 N.E.2d 1227, 1231 (Ind. 2002) ("insurer may avoid the effects of collateral estoppel by: (1) defending the insured under a reservation of rights in the underlying tort action, or (2) filing a declaratory judgment action for a judicial determination of its obligations under the policy"); *see also Liberty Mut. Ins. Co. v. Metzler*, 586 N.E.2d 897, 902 (Ind. Ct. App. 1992) ("An insurer, having knowledge its insured has been sued, may not close its eyes to the underlying litigation, force the insured to face the risk of that litigation without the benefit of knowing whether the insurer intends to defend or to deny coverage, and then raise policy defenses for the first time after judgment has been entered against the insured."), *trans. denied*.

4

If an insurer concludes that a claim is "patently outside the risks covered by the policy," the insurer may, of course, follow the path Conifer chose here and elect neither to defend nor to file for declaratory judgment. *T.B.*, 762 N.E.2d at 1231 (quotation omitted). But the insurer follows that course at its peril, because the insurer will be bound to the matters "necessarily determined" in the underlying lawsuit. *Id.* (quotation omitted).

Here, because Conifer neither defended its insureds nor filed a declaratory judgment action, Conifer is bound to the matters necessarily determined in the state court suit. But to determine what matters were "necessarily determined" in the underlying lawsuit here, a look at three major cases is instructive.

In *Frankenmuth Mut. Ins. Co. v. Williams*, the insurer failed to defend its insured in the underlying lawsuit, making the insurer bound to the matters "necessarily determined" in the underlying lawsuit. 690 N.E.2d 675, 677 (Ind. 1997). The insurer wanted to raise a defense under its policy's "intentional acts" clause, but the court rejected this effort because the insured had not been accused of any intentional act, and in the consent judgment the insured had admitted only to negligence. So the insurer was estopped from "complaining that all of [the] damages flowed from [an] intentional act." *Id.* at 678. The consent judgment represented a "final legal conclusion" that the insured committed negligence, that negligence was the legal cause of the tort plaintiff's injuries, and that damages came to $75,000. *Id.* at 678-79.

However, collateral estoppel did *not* prevent the insurer from raising a "business activity" defense, because the underlying lawsuit had not necessarily determined that issue. The consent judgment "in no way addressed" the issue of the insurer's contractual obligations to the insured, so the insurer was "obviously" not estopped from defending based on its policy's "business activity"

5

exclusion. *Id*. at 680. In short, the underlying lawsuit alleged negligence, and the insured admitted to negligence, so after the consent judgment was entered the *Frankenmuth* insurer was estopped from arguing that the insured had committed an intentional act. But the insured was not estopped from arguing its "business activity" defense, because the consent judgment did not address that issue.

In *Liberty Mut. Ins. Co. v. Metzler*, a trucker drove his truck into a bar, killing one and injuring many. 586 N.E.2d 897 (Ind. Ct. App. 1992), *trans denied*. An injured couple sued the trucker, alleging negligence. The trucker did not respond to the complaint, and the trial court entered default judgment against him. The couple then sought to collect against the truck's insurer in a proceeding supplemental. The insurer argued that the trucker's conduct was intentional, making it excluded from coverage. And indeed, there was considerable evidence that the trucker's conduct was intentional, because the trucker had been criminally prosecuted, and on appeal from that prosecution the Indiana Supreme Court held that he had acted intentionally. Nevertheless, in the proceeding supplemental the Indiana Court of Appeals held that the insurer was collaterally estopped from arguing that the conduct was intentional. Because the insurer had had notice of the underlying negligence lawsuit and did not defend or act to protect its interest in the litigation's outcome, the insurer was collaterally estopped from arguing that the trucker's intentional act barred coverage.

The insurer argued that it had the right not to defend or intervene once its own independent investigation determined there was no coverage, and that it should be allowed to raise policy defenses in the proceeding supplemental stage. The court agreed that the insurer had the "right" not to defend against a claim "patently outside of the risks covered by the policy," but the court held that the exercise of such a right "will [not] operate to bar collateral estoppel. To the contrary . . . an

6

insurer may refuse to defend its insured, but at its own peril." 586 N.E.2d at 901. The insurer, believing that it had no duty to defend, should have protected its interests by filing a declaratory judgment action or by defending the insured under a reservation of rights. Having declined to follow either course, the insurer "must now suffer the peril of its unilateral decision," namely a collateral estoppel bar against challenging whether the trucker acted negligently or intentionally. *Id*. at 902. And because the trial court had determined that the trucker acted negligently, the issue was closed.

In short, as in *Frankenmuth*, in *Metzler* the underlying lawsuit alleged negligence, so after judgment was entered the insurer was estopped from arguing that the insured had acted intentionally.

In *State Farm Fire & Ins. Co. v. T.B.*, an insurer declined to defend its insureds against a negligence lawsuit. 762 N.E.2d 1227 (Ind. 2002). The insureds then agreed to a consent judgment of $375,000 against them, and the court accepted it. When the plaintiff sought to collect from the insurer, the insurer argued that collateral estoppel did not bar it from raising a policy exclusion defense and argued that it should not be bound by the factual statements in the consent judgment that were not "necessary" to resolving the underlying lawsuit. 762 N.E.2d at 1230. The insurer conceded that it was collaterally estopped from disputing that the insureds were negligent, but the insurer sought to challenge certain factual statements in the consent judgment on the ground that those findings were not necessary elements of the consent judgment. The insurer argued that the underlying plaintiff had characterized events with the "obvious intent" of bringing the consent judgment within the policy's coverage. *Id*. at 1231.

The Indiana Supreme Court agreed that the characterizations were "unnecessary to sustain [the] complaint for damages regarding negligence" and that their "sole purpose" was to fall within coverage. *Id*. The court held that, if an insurer has notice of the factual determinations that will be

7

made to resolve a lawsuit, the insurer's failure to participate in the lawsuit "will bind it to those determinations," but an insurer cannot be estopped from contesting *unnecessary* matters resolved in the underlying litigation. *Id*. at 1232. So because the underlying plaintiff's claim did not specifically address the insurer's contractual obligations under the policy—even though the consent judgment did—collateral estoppel did not bar the insurer from challenging certain statements in the consent judgment.

In short, the underlying lawsuit alleged negligence, so after the consent judgment was entered the *T.B.* insurer was estopped from challenging that finding, but the insurer was *not* estopped from challenging factual statements in the consent judgment that were not necessary to the case's resolution. Rather, the insurer was only estopped from challenging findings that were necessary to sustain the complaint.

Here, Kras's state court complaint alleged that the attack on Kras occurred on the insureds' "property and premises." *See* ¶ 19. So Conifer had notice that the state court could make the factual determination that the attack occurred on the insureds' property and premises, and that that determination would bind Conifer. If Conifer believed that the attack did *not* occur on the insureds' property or premises, Conifer should have filed a declaratory judgment action and defended the insureds under a reservation of rights. That Conifer did neither was not necessarily improper, but the decision left Conifer at risk of facing a consent judgment that necessarily resolved the question of whether the attack occurred on the insureds' property.

However, it is not clear that the state court's judgment here *did* necessarily resolve that the attack occurred on the insureds' property. Unlike in *T.B.*, the state court here made no factual findings whatsoever. True, the state court complaint alleges that the attack occurred on the insureds'

"property and premises" (¶ 19). But the state court complaint also invites a verdict in Kras's favor even if the attack occurred on the portion of the nightclub's parking area that Conifer says is *not* owned by the insureds. First, the complaint alleges that the insureds' "property and premises . . . consists of a commercial type building and a parking area immediately adjacent to the commercial building" (¶ 11). The complaint then distinguishes between the "paved and/or concrete" portion of the parking area and the "gravel" portion of the parking area. (*Id.*) The complaint goes on to allege that Kras was the insureds' "business invitee" (¶ 22), that the insureds "knew or should have known" that their business invitees "regularly park . . . in the gravel parking area" due to the "limited space" on the paved or concrete parking area (¶ 12), that the business invitees' use of the gravel parking area was to the insureds' "commercial and financial advantage," and that Kras "reasonably believed" that the insureds "controlled" the gravel parking area (¶ 17). So the complaint suggests that, even if the attack occurred on the gravel portion of the parking area not owned by the insureds, the insureds are still liable for Kras's injury.

Because of this, the Court cannot find that the precise location of the attack was "necessarily determined" by the state court judgment. Accordingly, Conifer is entitled to discovery on the issue of where the attack occurred.

Kras points to the numerous findings of fact he proposed to the state court, including a finding regarding where the attack occurred. But the state court judge explicitly refused to make those findings, saying, "I'm not comfortable making the[se] findings . . . because I don't know them to be true. . . . I am prepared to enter a judgment . . . on the agreement . . . . in the amount specified, without making any findings whatsoever . . . but I'll leave for another day, *another court* . . . all of the findings that you're asking me to make, here." (Apr. 14, 2016 Tr. at 5-6 (emphasis added).)

9

Instead, the judge entered judgment "only for the [damages] amount that's been stipulated to," without making "any other findings." (*Id.* at 8.)

Kras argues that the state court judgment provided that the judgment was entered "[b]ased upon the Plaintiff's submission," referring to the parties' Agreement for Consent Judgment, but this ignores the fact that the state court relied on that submission only for the "consented judgment *amount*," not for any other issues (emphasis added). Conifer cannot be bound by findings that the state court itself did not trust to be true.

Kras also argues that discovery regarding the attack is unnecessary because Conifer already investigated the attack before making its coverage decision, so Conifer must necessarily already have the information it needs. True, Conifer had a duty to conduct a reasonable investigation into the incident. *Trisler v. Ind. Ins. Co.*, 575 N.E.2d 1021, 1023 (Ind. Ct. App. 1991) (allegations of complaint and facts known to or ascertainable by insurer after reasonable investigation determine insurer's duty to defend). But Kras cites no case law in support of this argument, and the argument ignores the possibility that evidence may exist *beyond* whatever evidence Conifer accumulated during its initial investigation.

Finally, Kras argues that discovery regarding the attack would be irrelevant because the attack's location has been established as a matter of law by virtue of the insureds' failure to respond to Kras's admissions requests, which asked the insureds to admit that Kras was attacked on the insureds' premises. Kras says that the insureds' failure to answer means that the fact has been admitted and therefore conclusively established, so there can be no dispute about the attack's location.

Kras is correct that failing to respond to requests for admission causes those matters to be

10

admitted and conclusively established by law. Indiana Trial Rule 36; *Henrichs v. Pivarnik*, 588 N.E.2d 537, 543 (Ind. Ct. App. 1992). But while the failure to respond to the requests for admission may have bound the insureds going forward, Kras has not cited—and the Court has not found—authority supporting the proposition that the failure to respond binds Conifer or overrules the collateral estoppel analysis described above. An insurer that abandons its insured as Conifer did here will be bound to issues necessarily determined in the underlying litigation, and as the Court has explained the question of the attack's precise location was not necessarily determined.

In sum, Conifer is entitled to discovery regarding the location of the attack, because the issue was not necessarily determined by the state court lawsuit.

### B.  Discovery on the state court judgment's reasonableness

Conifer also seeks discovery regarding whether the state court judgment was reasonable and whether it was the result of bad faith or collusion. *See Midwestern Indem. Co. v. Laikin*, 119 F. Supp. 2d 831, 842 (S.D. Ind. 2000) (Hamilton, J.) (collecting cases and concluding that Indiana courts would hold that a consent judgment binds the insurer on issues of liability and damages, "*so long as* the consent judgment . . . is not the product of bad faith or collusion and . . . falls somewhere within a broad range of reasonable resolutions of the underlying dispute") (emphasis added); *accord Carpenter v. Lovell's Lounge & Grill, LLC*, 59 N.E.3d 330 (Ind. Ct. App. 2016).

Kras argues that evaluating the judgment's reasonableness is appropriate only where—unlike here—the insurer defended on a reservation of rights or filed a declaratory judgment action. If Conifer *had* defended under a reservation of rights or sought declaratory judgment, Kras says, Conifer would indeed be entitled to a judicial determination regarding the state court judgment's reasonableness. But Conifer walked away, so Kras says the judgment's reasonableness need not be

evaluated.

The Court agrees with Conifer that judicial review of the state court judgment's reasonableness is appropriate. Requiring consent judgments between tort plaintiffs and insureds to be reasonable and non-collusive protects insurers—even insurers who breach their duty to defend their insureds, as Kras says Conifer has done—from "outrageous efforts to overreach" by underlying tort plaintiffs, "while still encouraging and allowing settlement of disputes between the abandoned insured and the injured plaintiffs." *Laikin*, 119 F. Supp. 2d at 842-43 ("Indiana courts would be willing to relieve a breaching insurer from the terms of a consent judgment that simply could not be deemed a reasonable resolution of the underlying lawsuit"); *Carpenter,* 59 N.E.3d at 340 ("substantial injustice" would result if insurer who breached duty to defend is bound to a consent judgment "even if [the] consent judgment is procured by bad faith or collusion").

Kras also argues that, even if evaluating the state court judgment's reasonableness is appropriate, the judgment's reasonableness here has been conclusively established. Kras says the insureds' failure to respond to Kras's admissions requests—which specifically explained the formula for calculating Kras's desired damages award—constituted admissions of those facts. For example, Admission Request No. 21 asked the insureds to admit or deny that "the reasonable amount of the future physical, mental, and emotional pain, suffering, and distress experienced [by Kras] is $1,350,500.00 (37 year life expectancy, 37 years x 365 days per year = 13,404 days x $100.00 per day = $1,350,500)." The admissions requests also provided similar calculations for Kras's other claimed damages. So, Kras says, the damages amount has been conclusively established, and there is no need for discovery regarding the judgment's reasonableness.

But as explained above, evaluating the reasonableness of an underlying judgment is

12

appropriate even when an insurer abandoned its insured. And it would be senseless to evaluate such a judgment's reasonableness only where the insured responded to the tort plaintiff's admissions requests and *not* to evaluate the judgment's reasonableness where the insured ignored the admissions requests. Doing so would cause an insurer's fate to hinge arbitrarily on the insured's decision to respond or not and would fail to guard against "outrageous efforts to overreach" by underlying tort plaintiffs. *See Laikin*, 119 F. Supp. 2d at 842; *Carpenter*, 59 N.E.3d at 340 ("Appellants' position would actually encourage insureds to engage in collusion if it was clear that no coverage was available and the insurer had not done anything to protect its interests.").

Kras also argues that, even if the Court decides to evaluate the state court judgment's reasonableness, the judgment was reasonable as a matter of law from the insureds' standpoint under Indiana's reasonableness standard—and no discovery, Kras says, is needed to reach that conclusion.

Kras is correct that the standard of reasonableness for a consent judgment between a tort plaintiff and an abandoned insured is a "generous one" that allows "for a very broad range of reasonable resolutions." *Laikin*, 119 F. Supp. 2d at 843. The standard takes into account uncertainty regarding issues of fact and law, the parties' varying degrees of risk aversion, the burden of litigation on the abandoned insured, and the wide ranges of damages awards that can be proper where an injury is not subject to precise quantification. *Id*. So an insurer's challenge to a consent judgment's reasonableness is not "an opportunity to relitigate issues based merely on 20/20 hindsight" or based on an insurer's belief that it could have negotiated a better deal. *Id*. Even if the insured's evaluation of the litigation risk is arguably mistaken, a reasonable settlement will stand. *Id*. at 844. A court should view the consent judgment from the perspective of the insured at the time of the agreement, "keeping in sharp focus the premise that the insured breached its contract and left the insured

13

hanging, exposed to the serious risk of devastating personal liability." *Id*.

Likewise, Kras is correct that the issue should be decided as a matter of law—unless there are "clear grounds for finding the settlement fell outside any reasonable bounds"—because a trial on the settlement's reasonableness "would effectively amount to a complex trial within a trial." *Id*. At the trial's core would be evidence on the underlying tort claims—evidence regarding liability, injury, and damages—in other words the very trial the insured and the tort plaintiff sought to avoid. And layered on top of that would be evidence about the underlying litigation itself and the course of settlement negotiations, inviting "opinions from lawyers, claims adjusters, and perhaps mediators and judges, expressing their views on the reasonableness of the settlement terms." *Id*. at 845. So an insurer must clear a "high bar" before the Court will impose such a trial on parties "who thought they had settled their dispute." *Id*.

But Kras's argument that there are no clear grounds for finding that the judgment amount was unreasonable is premature. Kras argues that the Court "could readily conclude" that the judgment amount was reasonable based on the evidence that the insureds were negligent, information regarding Kras's injuries and medical expenses, case law regarding juries' "wide latitude in making damages determinations" for physical pain and suffering, and the insureds' reasons for deciding to agree to the consent judgment. But the time to assess the judgment's reasonableness is at the summary judgment stage. The question now is whether Conifer is entitled to discovery regarding the judgment's reasonableness. And the answer is that Conifer is entitled to at least some discovery regarding whether the judgment was reasonable or was the result of bad faith or collusion.

Conifer describes its questions as follows: "How was the Judgment calculated? What were

Plaintiff's medical costs? What information was provided to the underlying defendants/judgment debtors before the consent judgment was submitted to the state trial court?" Answering these questions will not likely be burdensome for Kras; indeed, Kras has answered many of these questions already in his response to the instant Motion. Plainly, Conifer is not entitled to re-litigate the state court case. *Laikin*, 119 F. Supp. 2d at 842 ("Such a rule would encourage denial of coverage and multiply litigation."). But Conifer is entitled, at a minimum, to submit formal interrogatories regarding the judgment's reasonableness. Whether the answers will allow Conifer to clear the "high bar" that it must clear before bringing the issue in front of a fact-finder remains to be seen. *See Carpenter*, 59 N.E.3d at 340 (insurer that abandoned its insured "has the burden to prove by clear and convincing evidence that the Consent Judgment was procured by bad faith or collusion").

In sum, Conifer is entitled to at least some limited discovery regarding whether the consent judgment was reasonable or was the result of bad faith or collusion.

## III. Kras's request to rule on whether the policy language is ambiguous

Kras argues that, if the Court does allow Conifer to conduct discovery, the Court can help avoid unnecessarily protracted discovery by ruling now on whether Conifer's policy language is ambiguous.

The basis for Conifer's denial of coverage is that the policy limits coverage only to the insureds' physical property boundaries, and Conifer says the attack occurred on the gravel area outside that boundary. But if the relevant policy language is ambiguous, Kras says, then the insureds had coverage even if the attack *did* occur where Conifer says it occurred. *West Bend Mut. v. Keaton*, 755 N.E.2d 652, 654 (Ind. Ct. App. 2001) (policy limitations must be expressed clearly), *trans.*

*denied*; *Am. Nat'l Fire Ins. Co. v. Rose Acre Farms*, 107 F.3d 451, 457 (7th Cir. 1997) (clause excluding coverage must "clearly and unmistakably" bring excluded condition within its scope) (citation omitted). Deciding now whether the policy language is ambiguous, Kras says, would obviate the need to wade into a discovery quagmire. *Westfield Cos. v. Knapp*, 804 N.E.2d 1270, 1273-74 (Ind. Ct. App. 2004) ("[t]he interpretation of a contract is a matter of law"), *trans. denied*.

But the limited discovery inquiries described above do not threaten to prolong this lawsuit enough to warrant ruling on the policy language before summary judgment. Discovery is limited in cases like this to protect a tort plaintiff from having to litigate a lawsuit against an abandoned insured that the plaintiff thought he had settled. Plus, even if the Court were to find the policy language ambiguous, the question of whether the judgment was reasonable or was the product of bad faith or collusion would remain. So the more expedient course is to wait to rule on this issue until the parties have fully briefed their summary judgment motion(s). *Myles v. General Agents Ins. Co. of Am.*, 197 F.3d 866, 868 (7th Cir. 1999) ("Indiana courts have recognized that construction of an insurance policy is a question of law for which summary judgment is particularly appropriate.") (internal quotation omitted).

**IV.     Conclusion**

For the reasons above, the Court **GRANTS** Conifer's Motion for Extension of Time to Respond to Plaintiff's Motion for Summary Judgment [DE 20] and **ORDERS** that Conifer's deadline for responding to Kras's Motion for Summary Judgment [DE 17] is **STAYED** until 30 days after the close of discovery or the resolution of any discovery disputes, whichever comes later.

SO ORDERED this 23rd day of November, 2016.

s/ John E. Martin<br>
MAGISTRATE JUDGE JOHN E. MARTIN

UNITED STATES DISTRICT COURT

cc: All counsel of record