# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

| | | |
|---|---|---|
| NATHAN KRAS, | ) | |
|     Plaintiff/Judgment Creditor, | ) | |
| | ) | |
| v. | ) | CAUSE NO.:2:16-CV-224-JEM |
| | ) | |
| CONIFER INSURANCE COMPANY, | ) | |
|     Garnishee-Defendant, | ) | |
| _____ | ) | |
| | ) | |
| CONIFER INSURANCE COMPANY, | ) | |
|     Counterclaim Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| NATHAN KRAS, *et al*., | ) | |
|     Counterclaim Defendants. | ) | |

## OPINION AND ORDER

This matter is before the Court on: Garnishee-Defendant's Motion to Exclude the Proffered Affidavit Testimony of Plaintiff's Expert David Demik [DE 106], filed by Conifer Insurance Company on July 11, 2019; Garnishee-Defendant's Motion for Summary Judgment [DE 108], filed by Conifer Insurance Company on July 11, 2019; Plaintiff's Motion for Summary Judgment on Conifer Insurance Company's Duty to Defendant, Coverage and Indemnification [DE 111], filed by Kras on July 11, 2019; and Plaintiff's Motion and Memorandum in Support to Strike Affidavit of Detective Sgt. Stephen Guernsey [DE 118], filed by Kras on August 8, 2019.

The parties have filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c).

**I.    Procedural Background**

In September 2013, Nathan Kras was shot outside Dick's R U Crazy, a tavern in Hammond, Indiana. Two years later, in September 2015, Kras sued the tavern and its owners in state court, alleging negligence. The nightclub owners had insurance with Conifer Insurance Company, but Conifer denied the nightclub defendants' request for coverage for the attack. In Conifer's view, the policy provided coverage for the nightclub property only, not for the adjoining gravel parking lot where Conifer said the attack occurred. Conifer did not move for a declaratory judgment in the state court, and the state court litigation between Kras and the nightclub defendants proceeded without Conifer's involvement. In April 2016, Kras and the owners entered into a consent judgment, and the state court entered judgment against them for $2,955,056.

Having received judgment in his favor, in April 2016 Kras filed a motion for a proceeding supplemental. Kras sought to garnish $2,955,056 from Conifer in satisfaction of the state court judgment against the judgment debtors. Conifer removed the case to this Court on June 13, 2016, and thereafter filed a counterclaim for declaratory judgment on the grounds that it did not owe coverage to the judgment debtors.

Accordingly, the two claims proceeding in this Court are a garnishment proceeding to determine whether Conifer is in possessions of any assets that should be used for payment of the state court judgment, and a counterclaim for declaratory judgment that the underlying judgment debtors are not entitled to coverage from Conifer for the actions giving rise to the state suit. Limited discovery was allowed on the question of where Kras's injury occurred and whether the consent judgment was reasonable or was the result of bad faith or collusion.

Both parties filed motions for summary judgment and motions to strike. All four motions have been fully briefed. Conifer seeks judgment asserting that it is not required to provide coverage

2

under the insurance policy and that, even if it is required to provide coverage, it is not bound by the terms of the consent judgment. Kras requests that the Court find that coverage of the incident is required under the insurance policy in the full amount of the consent judgment, including post-judgment interest. Both parties have also moved to have the testimony of the other's expert witness excluded.

The parties have filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c).

## II.     Summary Judgment Standard

The Federal Rules of Civil Procedure mandate that motions for summary judgment be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). "[S]ummary judgment is appropriate – in fact, is mandated – where there are no disputed issues of material fact and the movant must prevail as a matter of law. In other words, the record must reveal that no reasonable jury could find for the non-moving party." *Dempsey v. Atchison, Topeka, & Santa Fe Ry. Co.*, 16 F.3d 832, 836 (7th Cir. 1994) (citations and quotations omitted). To demonstrate a genuine issue of fact, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," but must "come

3

forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (quoting Fed. R. Civ. P. 56(e)).

In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences in favor of that party. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986); *Srail v. Vill. of Lisle*, 588 F.3d 940, 948 (7th Cir. 2009); *NLFC, Inc. v. Devcom Mid-Am., Inc.*, 45 F.3d 231, 234 (7th Cir. 1995). A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *See Liberty Lobby*, 477 U.S. at 249-50. On cross motions for summary judgment, a court construes, "all inferences in favor of the party against whom the motion under consideration is made." *Speciale v. Blue Cross & Blue Shield Ass'n*, 538 F3.d 615, 621 (7th Cir. 2008). The Court looks to the burden of proof each party would bear on an issue at trial. *Diaz v. Prudential Ins. Co. of Am.*, 499 F.3d 640, 643 (7th Cir. 2007) (quoting *Santaella v. Metro. Life Ins. Co.*, 123 F.3d 456, 461 (7th Cir. 1997)).

Indiana state law governs the substance of the parties' coverage dispute. *See, e.g., Am. Std. Ins. Co. v. Drew*, No. 08-48, 2009 U.S. Dist. LEXIS 99135, *11 (N.D. Ind. Oct. 15, 2009) (citing *Harper v. Vigilant Ins. Co.*, 433 F.3d 521, 525 (7th Cir. 2005)). In Indiana, the construction of a written contract is a generally question of law for which summary judgment is "particularly appropriate." *Plumlee v. Monroe Guar. Ins. Co.*, 655 N.E.2d 350, 354 (Ind. Ct. App. 1995), *trans. denied*. Before granting summary judgment based on the construction of a written contract, the Court must determine either that as a matter of law the contract is not ambiguous or uncertain, or that any ambiguity can be resolved without the need for fact-finding. *Id*. Generally, insurance

4

contracts "are subject to the same rules of interpretation and construction as are other contracts." *Eli Lilly & Co. v. Home Ins. Co.*, 482 N.E.2d 467, 470 (Ind. 1985). An exclusion in an insurance policy "must clearly and unmistakably bring within its scope the particular act or omission that will give rise to the exclusion," and coverage "will not be excluded or destroyed by an exclusion unless such clarity exists." *Keckler v. Meridian Sec. Ins. Co.*, 967 N.E.2d 18, 23 (Ind. Ct. App. 2012), *trans. denied*.

### III. Policy Language and Relevant Facts

Conifer issued a commercial general liability insurance policy to Dick's R U Crazy. It includes a Designated Premises Endorsement (DPE) that clearly states that "this endorsement changes the policy" and, in large, all-caps, bold font, is labeled "Limitation of Coverage to Designated Premises or Project." The DPE Schedule defines the premises as 1221 E 150th St, Hammond, IN 46327, which is the address of Dick's R U Crazy tavern and a paved lot. It then states, "This insurance applies only to 'bodily injury,' 'property damage,' 'personal and advertising injury,' and medical expenses arising out of : 1. The ownership, maintenance or use of the premises shown in the Schedule and operations necessary or incidental to those premises; or 2. The project shown in the Schedule."

On September 16, 2013, Kras parked his car on a gravel lot owned and maintained by the City of Hammond, next to the paved lot that is part of the tavern premises. When he exited his car, he was attacked by two assailants, who shot him twice. Kras then entered the tavern to get help, while the assailants fled.

IV. Analysis

    A.    <u>Motions to Strike</u>

Kraus has moved to strike the affidavit of Detective Guernsey, submitted by Conifer in support of its motion for summary judgment. Guernsey is a police officer who investigated the incident in which Kras was injured.

Kras argues that Guernsey's opinions as to where he was attacked and shot should be excluded pursuant to Federal Rule of Evidence 702. Conifer argues that Detective Guernsey is qualified to testify as an expert and that his affidavit is admissible pursuant to Rule 702.

The admissibility of expert testimony is governed by Federal Rule of Evidence 702 and the standards set forth by the United States Supreme Court in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). *See Ervin v. Johnson & Johnson, Inc*., 492 F.3d 901, 904 (7th Cir. 2007). Rule 702 provides that courts should admit expert testimony if

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702 . Under Rule 702, "[t]he district court is a 'gatekeeper' who determines whether proffered expert testimony is reliable and relevant before accepting a witness as an expert." *Winters v. Fru-Con Inc*., 498 F.3d 734, 741-52 (7th Cir. 2007) (quoting *Autotech Tech. Ltd. P'ship v. Automationdirect.com*, 471 F.3d 745, 749 (7th Cir. 2006)). Courts use a three-step analysis to determine the admissibility of expert testimony: (1) whether the witness is "qualified as an expert by knowledge, skill, experience, training, or education," (2) whether the subject of an expert's testimony is "scientifically reliable," and (3) whether the testimony will "assist the trier of fact to

understand the evidence or to determine a fact in issue." *Ervin*, 492 F.3d at 904; *see also Myers v. Ill. Cent. R.R. Co.*, 629 F.3d 639, 644 (7th Cir. 2010).

Kras argues that the affidavit does not show sufficient qualifications for Guernsey to be considered as an expert, and argues that he may be qualified as a crime investigator, but not in any field beyond that, listing a number of expert qualifications that Guernsey does not have. He also argues that the opinions in the affidavit go beyond the areas of his expertise. In the affidavit, Detective Guernsey lays out his education, including a degree in criminal justice and homicide classes, and his 21 years of experience in collecting and processing evidence at crime scenes, including 13 years as a detective in the violent crimes unit. Although Kras is correct that Guernsey is not an expert in one of any number of other fields, Detective Guernsey appropriately testified as a fact and expert witness in his role as a police officer, and his experience in that role gives him the relevant expertise to provide his testimony. *See, e.g., United States v. Lightfoot*, 224 F.3d 586, 588–89 (7th Cir. 2000) (reminding that "there is nothing wrong with having a police officer testify both as a fact witness and an expert witness" and finding that officer with "nearly 25 years' general experience as a police officer, 8 years' experience investigating narcotics, and . . . [narcotics] training" was "amply qualified to testify as an expert").

Kras also argues that Guernsey's opinions "are based on nothing more than his gut -feeling, based largely upon his analysis in an area in which he has no expertise." Review of the affidavit reveals that Guernsey does have significant experience in crime scene investigation, drawing conclusions about the facts of incidents from the evidence and interviews. Kras does not cite any cases to indicate that crime scene investigation of the type Guernsey did is not credible, and the affidavit lays out the way Guernsey reached his conclusions, explaining the evidence he collected

7

and the methods he used to reach his conclusions, based on his crime investigator experience. Although it is possible that other experts may come to different opinions from the evidence obtained by Guernsey, or that the assumptions he made are disagreeable to Kras, that does not affect the admissibility of his testimony as an expert, and the Court finds that his opinion is based on sufficient facts and data and is the product of reliable principles and methods in accordance with Rule 702.

Kras also argues that a number of the paragraphs of the affidavit should be stricken pursuant to Federal Rule of Civil Procedure 56. Rule 56(c)(4) provides that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). Kras argues that a number of statements in the affidavit are based on Guernsey's belief, not his personal knowledge, and include inadmissible hearsay. Conifer argues that the enumerated paragraphs include information made on Guernsey's personal knowledge as overseeing the investigation into the shooting incident, and that the affidavit offers his opinion on where Kras was attacked and shot based on that evidence and his investigation, interviews, and experience. Kras does not specifically describe why each of the paragraphs he claims should be stricken are inadmissible, but just argues generally that they contain information that is impermissible. Review of the affidavit demonstrates that the enumerated paragraphs explain Guernsey's personal knowledge about the evidence collected at the crime scene, opinion evidence based on the detective's expertise, as described above, and prior statements of Kras obtained by Guernsey in the course of his investigation. To the extent that Kras is arguing that inclusion of his statements to the detective are inadmissible, that argument is inconsistent with Federal Rule of

8

Evidence 801(d)(2). *See United States v. Reed*, 227 F.3d 763, 770 (7th Cir. 2000). Accordingly, the affidavit of Detective Guernsey will not be stricken.

Conifer requests that the Court exclude the affidavit of David DeMik because he was not properly disclosed as an expert in this case. It asserts that Kras disclosed him as a "hybrid" witness under Federal Rule of Civil Procedure 26(a)(2)(C) rather than as an expert witness, but that his testimony is not about first-hand knowledge of events, and the disclosure did not satisfy the requirements for an expert witness. In response, Kras asserts that DeMik, a police chief from another town in Indiana, is an expert witness who will testify about the location of Kras when he was shot based on his review of evidence collected during the Hammond police investigation, and that the incomplete disclosure did not cause prejudice to Conifer.

Kras provided the expert disclosure of DeMik on June 6, 2019, the deadline for expert witness disclosures. It included the identity of the expert, a summary of the subject matter, facts and opinions of DeMik, along with an affidavit laying out his conclusions. Conifer asserts that Kras did not comply with the Rule 26 requirements for expert witness disclosures: there is no mention of DeMik's publications, list of cases in which he has testified as an expert, or statement of compensation paid for his work as an expert. *See* Fed. R. Civ. P. 26(a)(2)(B)(iv), (v), (vi). Conifer argues that it has been prejudiced by the late and incomplete disclosure and that the affidavit should be excluded. Kras argues that the information that was omitted did not cause prejudice to Conifer.

Federal Rule of Civil Procedure 26 requires that at the initial disclosure stage, an expert witness must provide a written report. If a party "learns" that its initial disclosures are incomplete, it must supplement them "in a timely manner." Fed. R. Civ. P. 26(e)(1)(A). If the disclosures do not comply with Rule 26(a) or 26(e), "the party is not allowed to use that information or witness to

9

supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). The Court has broad discretion in determining whether a violation is justified or harmless, but should consider the following factors: (1) prejudice or surprise to the non-disclosing party; (2) the ability of the disclosing party to cure the prejudice; (3) the likelihood of disruption to the trial; and (4) the bad faith or willfulness involved in not disclosing the evidence at an earlier date. *Uncommon, LLC v. Spigen, Inc.*, 926 F.3d 409, 417 (7th Cir. 2019) (citations omitted).

Kras admits that the disclosure was incomplete, but argues that excluding DeMik as an expert is an extreme sanction. He argues that DeMik has not made any publications in the last ten years or served as an expert witness in the last four years, so the failure to provide that information is harmless, and that the compensation for this matter is irrelevant on a motion for summary judgment. However, Conifer also argues that it is not apparent from the expert disclosure and affidavit whether Kras has provided "a complete statement" of DeMik's opinions, *see* Fed. R. Civ. P. 26(a)(2)(B)(i), and it is prejudiced by the lack of adequate disclosure and inability to prepare a response. *Meyers v. Nat'l R.R. Passenger Corp. (Amtrak)*, 619 F.3d 729, 734 (7th Cir. 2010) ("The purpose of the report is to provide adequate notice of the substance of the expert's forthcoming testimony and to give the opposing party time to prepare for a response."). It appears that Kras still has not supplemented his disclosure to bring it into compliance with Rule 26, despite his apparent ability to do so, and provided no explanation for his failure to provide a full disclosure before the expert disclosure deadline, or, indeed, at any point. The Court cannot find that its failure to meet the requirements of Rule 26 was substantially justified or harmless, and DeMik's affidavit is excluded from consideration on this motion. Conifer also argues that DeMik's testimony should be excluded

pursuant to Federal Rule of Evidence 702. Because it is excluded for failure to comply with the disclosure requirements of Rule 26, the Court need not reach this argument.

B.     Cross Motions for Summary Judgment

Kras moves for an order granting judgment in his favor, arguing that there is no genuine issue of material fact as to Conifer's duty to defend the judgment debtors in the underlying litigation, that Conifer is responsible for insurance coverage of Kras's claim, and therefore that Conifer is liable to Kras for payment on the consent judgment in the state court lawsuit. Conifer argues that it is entitled to judgment as a matter of law declaring that it is not required to provide coverage under the policy, and that even if it is, it is not bound by the terms of the consent judgment.

Conifer argues that the DPE limits the coverage and excludes coverage for bodily injury that occurred outside of the premises. Kras argues that the DPE is ambiguous because it does not clearly express the coverage limitation, and that the language does not clearly and unambiguously preclude coverage for any injury that happens off-premises. Conifer argues that even if the DPE is ambiguous, it must be construed from a neutral stance, and not giving favor to Kras, and that even construing it from a stance in favor of insurance, Kras's injury is not covered.

"Ambiguity in an insurance contract exists when it is susceptible to more than one interpretation and reasonably intelligent men would honestly differ as to its meaning. . . . If the court does not find ambiguity in the language of the contract, it will be given its plain and ordinary meaning." *Anderson v. State Farm Mut. Auto. Ins. Co.*, 471 N.E.2d 1170, 1172 (Ind. Ct. App. 1984). However, "[a]n ambiguity is not established by the mere existence of a controversy or by the parties' differing interpretations of the contract terms." *Barga v. Ind. Farmers Mut. Ins. Grp., Inc.*, 687 N.E.2d 575, 578 (Ind. Ct. App. 1997) (citing *Meridian Mut. Ins. Co. v. Cox*, 541 N.E.2d 959, 961

11

(Ind. Ct. App.1989), *trans. denied* (1990)). Although "disagreement among courts as to the meaning of a particular contractual provision is evidence that an ambiguity may exist, . . . a division of authority is only evidence of ambiguity," and the Indiana Supreme Court has emphasized that "[a]mbiguity will be found only if reasonable persons would differ as to the meaning and is not established simply because controversy exists." *Allgood v. Meridian Sec. Ins. Co.*, 836 N.E.2d 243, 248 (Ind. 2005) (citations omitted). In general, "'[w]here there is ambiguity, insurance policies are to be construed strictly against the insurer' and the policy language is viewed from the standpoint of the insured." *Bosecker v. Westfield Ins. Co.*, 724 N.E.2d 241, 244 (Ind. 2000) (quoting *American States Ins. Co. v. Kiger*, 662 N.E.2d 945, 947 (Ind.1996)). However, in a situation "when a case involves a dispute between a third party and an insurer . . . we determine the general intent of the contract from a neutral stance." *Am. Family Ins. Co. v. Globe Am. Cas. Co.*, 774 N.E.2d 932, 936 (Ind. Ct. App. 2002).

Conifer argues that the DPE clearly and unambiguously limits coverage, noting that a number of courts have examined the language at issue in this case and found that it is not ambiguous. Kras argues that the term "arising out of" is ambiguous in the context of non-automobile insurance, and that any ambiguity should be resolved in favor of him, as standing in the shoes of the insured, rather than from a neutral standpoint. The parties agree that no Indiana court has examined the DPE language in this case or opined as to whether it is ambiguous in the premises context. In Indiana, in the context of automobile insurance policies, "the phrase 'arising out of' . . . long has been construed to mean that one thing must be the 'efficient and predominating' cause of something else." *Keckler*, 967 N.E.2d at 23.

Kras distinguishes Indiana cases which construe "arising out of" in the context of automobile cases (meaning that one thing is "the efficient and predominating cause of" something else) from cases using that language in other insurance contexts. Kras points to *Barga*, which examined an insurance contract in the context of an auto business exclusion and found the term "arising out of business operations" to be ambiguous because "[i]t could be construed to mean 'any connection, however slight' to such operations; or 'used exclusively' in such operations; or something in between." *Barga*, 687 N.E.2d at 578. The court construed the term from a neutral standpoint and concluded, "the 'efficient and predominating cause' of the accident must have been an auto business operation in order for coverage to be excluded." *Id*. Kras argues that because the "arising out of" language was found by an Indiana court to be ambiguous in a non-automobile business operations insurance context, it also must be ambiguous in the premises context. Kras also identifies a number of cases from other jurisdictions examining similar DPE language and finding it ambiguous. Conifer identifies a number of cases from other jurisdictions examining language in the DPE in the premises context and finding that the language was unambiguous, and argues that other circumstances in the cases cited by Kras, such as the location of the language in the policy or language that was not clear enough to put insureds on notice that the coverage was limited to the premises, are distinguishable from this case, so the reasons that those courts found the language to be ambiguous differ from the circumstances in this case.

The Court need not decide whether the language is ambiguous in this context. Even in those cases that found the language to be ambiguous and interpreted the language from a standpoint favoring the insured, there must be some sort of connection between the premises and the injury provoking the coverage dispute in order for it to be covered. In this case, the Complaint alleges that

13

Plaintiff parked on the gravel area with the intent of going to Dick's R U Crazy, and was assaulted upon leaving his car. Detective Guernsey's affidavit likewise explains his conclusion from investigating the crime that both of the shots that injured Kras occurred in the gravel area, and that there was no evidence to support a finding that he was also shot in a second location. The only evidence in the record that there was a second shot outside of the gravel area comes from Kras's deposition testimony, taken more than three years after the incident. Detective Guernsey reports that in his interviews with Kras following the shooting, Kras did not mention that the second shot occurred in a separate location. Guernsey asserts that his investigation led him to conclude that both shots occurred in the gravel area, and that there is no evidence to support a finding of a shot in a second location. In particular, he explains that surveillance video shows an individual presumed to be Kras running from the gravel area toward the entrance of the bar, with no one chasing him and no muzzle flash from a gun, and that Kras did not stop or make any sudden movements in the location where he testified the second shot occurred. In addition, if Kras was shot while running, he would have been shot from behind, but the investigation revealed that he was shot in the front of his leg and stomach. The blood that was viewed at the crime scene was located on the gravel area next to Kras's car and inside his car door, and the bullet casing that was recovered was also on the gravel area. Kras's later deposition is insufficient to create an issue of fact regarding where his injury occurred. Although "[s]elf-serving affidavits can indeed be a legitimate method of introducing facts on summary judgment," *McKinney v. Office of Sheriff of Whitley Cty.*, 866 F.3d 803, 814 (7th Cir. 2017) (quoting *Widmar v. Sun Chemical Corp.*, 772 F.3d 457, 459–60 (7th Cir. 2014)), they must still be supported by sufficient evidence to create a dispute of fact. *See Whitaker v. Wis. Dep't of Health Servs.*, 849 F.3d 681, 686 (7th Cir. 2017). Plaintiff's recent deposition testimony is

inconsistent with his earlier statements to the investigating officer and with the evidence from the scene, as described by Detective Guernsey, and he has not provided any other evidentiary support. *Abuelyaman v. Ill. State Univ.*, 667 F.3d 800, 812 (7th Cir. 2011) ("It is well settled that conclusory allegations and self-serving affidavits, **without support in the record**, do not create a triable issue of fact.") (quoting *Hall v. Bodine Elec. Co.*, 276 F.3d 345, 354 (7th Cir.2002) (emphasis added)). No reasonable finder of fact could conclude that the second shot occurred on the paved area while Plaintiff was running away from his car.

Even if the Court construes the policy in favor of Kras, allowing him to step into the shoes of the insured, the only connection between his injury and the designated premises is that he claims that he intended to patronize the business when he parked nearby, and that he went to the tavern after he was shot. He does not provide any evidence that he was shot because of anything that happened at the tavern or because of anything the tavern did or did not do. He parked in a gravel lot that was not owned by the tavern, next to the paved lot adjacent to the tavern, with the stated intention of patronizing the tavern, and then was unfortunately injured on the gravel lot by others who came from elsewhere and were unknown to the tavern, either as employees or patrons. No factfinder could conclude that there was a causal connection between Kras's injuries, however unfortunate, and the tavern, let alone that the tavern was "the 'efficient and predominating cause' of the accident." *Barga*, 687 N.E.2d at 578-79 (interpreting the "arising out of" language from neutral standpoint); *see Grinnell Mut. Reinsurance Co. v. Ault*, 918 N.E.2d 619, 626 (Ind. Ct. App. 2009) (finding that the phrase "arising out of" is not ambiguous and interpreting to connote at least "a causal connection between an insured's business activities and a victim's injuries"); *see also Am. Guarantee & Liab. Ins. Co. v. 1906 Co.*, 129 F.3d 802, 807 (5th Cir. 1997) (interpreting a DPE and

concluding: "The phrase 'arising out of' is ordinarily understood to mean 'originating from,' 'having its origin in,' 'growing out of,' or 'flowing from.' In the insurance context, this phrase is often interpreted to require a causal connection between the injuries alleged and the objects made subject to the phrase.") (describing cases).

Injury to someone who is not yet a patron on premises that do not belong to and are not under the control of the tavern by persons who likewise have no relationship to the tavern or its premises cannot be construed as "arising out of" the tavern's business activities, no matter how generously that term is construed. The insurance contract does not cover Kras's injuries. *See also State Farm Mut. Auto. Ins. Co. v. Spotten*, 610 N.E.2d 299, 302 (Ind. Ct. App. 1993) ("A random act of violence by a vehicle passenger—which may or may not have been perpetrated with the acquiescence of the driver/owner—is not a risk reasonably contemplated by the parties and expressed in the contract. Therefore, [the defendant's] injuries did not arise from the operation, maintenance or use of an uninsured vehicle."); *see also Allstate Ins. Co. v. Alamo*, No. 2:09 CV 176, 2010 WL 4739808, at *5 (N.D. Ind. Nov. 16, 2010) ("Accidents that occur outside and independent of the [covered] vehicle are too attenuated to constitute use of the vehicle within the terms of the contract."). The Court need not determine whether the state court judgment was reasonable or was the product of bad faith or collusion, because the policy issued by Conifer does not cover the injuries suffered by Kras.

## V. Conclusion

For the foregoing reasons, the Court hereby **GRANTS** the Garnishee-Defendant's Motion to Exclude the Proffered Affidavit Testimony of Plaintiff's Expert David Demik [DE 106] and the Garnishee-Defendant's Motion for Summary Judgment [DE 108]. The Court **DENIES** Plaintiff's Motion for Summary Judgment on Conifer Insurance Company's Duty to Defendant, Coverage and

16

Indemnification [DE 111] and Plaintiff's Motion and Memorandum in Support to Strike Affidavit of Detective Sgt. Stephen Guernsey [DE 118]. The Court hereby **DIRECTS** the Clerk of Court to enter judgment in favor of Conifer Insurance Company and against Nathan Kras and the other Counterclaim Defendants on all claims and counterclaims in this case.

Because the case is now fully resolved, the Court hereby **DENIES as moot** the Motion to Set Status Conference [DE 129].

SO ORDERED this 16th day of March, 2020.

s/ John E. Martin
MAGISTRATE JUDGE JOHN E. MARTIN
UNITED STATES DISTRICT COURT

cc:   All counsel of record